IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROBERT BATES, | ) |
|     Petitioner, | ) ) ) |
| v. | ) )    No. 2:23-cv-02574-SHL-atc |
| F.J. BOWERS, | ) ) ) |
|     Respondent. | ) ) |

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS, DISMISSING § 2241 PETITION, CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is Petitioner Robert Bates' *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("§ 2241 Petition"), filed August 23, 2023.[1]  (ECF No. 1.)  Petitioner paid the habeas filing fee.  (ECF No. 4.)  On October 11, Respondent Warden F.J. Bowers filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss").  (ECF No. 6.)  Petitioner filed a response on November 1.  (ECF No. 7.)

For the reasons that follow, the Court **GRANTS** Respondent's Motion to Dismiss and **DISMISSES** the § 2241 Petition for lack of subject matter jurisdiction.

I.   BACKGROUND

On May 2, 2017, Petitioner was convicted by a jury of five counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 & 2; three counts of aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 & 2; and one count of conspiracy to commit mail and wire

---

[1] When Petitioner, who is currently confined at the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis") and whose Bureau of Prisons ("BOP") register number is 27606-076, filed his § 2241 Petition, he was confined at the Federal Correctional Institution Memphis Satellite Prison Camp ("FCI Memphis SPC") in Millington, Tennessee.  (ECF No. 1 at PageID 1.)

fraud, in violation of 18 U.S.C. § 1349.  (2:15-cr-20192-SHL-3 ECF No. 613.)  Petitioner was sentenced to 151 months of imprisonment, to be followed by a three-year term of supervised release.[2]  (*Id*. at PageID 11123–24.)  Petitioner appealed, and the Sixth Circuit affirmed his convictions and sentences.  *United States v. Bates*, 784 F. App'x 312, 341 (6th Cir. 2019).

Petitioner was also found guilty by a jury of eight counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (2:16-cr-20044-JTF-1 ECF No. 81.)  He was sentenced to twenty-four months of imprisonment on each count, to be served concurrently, followed by a three-year term of supervised release.  (*Id*. at PageID 370–71.)  Petitioner filed a direct appeal, and the Sixth Circuit affirmed.  *United States v. Bates*, 730 F. App'x 281, 287 (6th Cir. 2017).

## II.      § 2241 PETITION

On August 23, 2023, Petitioner filed his § 2241 Petition alleging due process and equal protection claims based on his request for home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Public Law No. 116-136.  (ECF No. 1.)  Petitioner alleges that he first requested CARES Act placement in December 2022.  (*Id*. at PageID 3.)  Unit Manager Smith at the FCI Memphis SPC allegedly reviewed Petitioner's file and told him that he would submit a CARES Act application for Petitioner in 2023.  (*Id*.)

Petitioner alleges that he signed his CARES Act application on May 9, 2023, and it was submitted to the Residential Re-Entry Manager ("RRM") for review and consideration.  (*Id*.)  Petitioner alleges that he learned on June 19, 2023, that his CARES Act application had been rejected by the RRM because Petitioner had not yet served fifty percent of his sentence.  (*Id*.)

---

[2] The sentence in No. 2:15-cr-20192-SHL-3 was to be served consecutive to the sentence imposed in No. 2:16-cr-20044-JTF-1 for a total aggregate sentence of 175 months of imprisonment.

Camp Administrator Avery allegedly told Petitioner that there were "no administrative remedies available" for Petitioner to challenge the RRM's decision, and that his only option was to file a habeas petition under § 2241. (*Id.*)

Petitioner asks the Court to order Respondent to accept his application for consideration and to conduct an "immediate review" of the application considering only the factors in 28 C.F.R. Part 0. (*Id.* at PageID 7.) He also seeks "all other relief to which he is entitled." (*Id.*)

### III.   ANALYSIS

The BOP has the sole authority to determine the place of an inmate's confinement. *See* 18 U.S.C. § 3621(b). The BOP also has the authority to permit an inmate to serve the end of a term of incarceration in a community correctional facility or residential re-entry center for a period not to exceed twelve months, or to place an inmate on home confinement for the shorter of ten percent of the term of imprisonment or six months. 18 U.S.C. § 3624(c)(1)–(2). That authority was expanded under the CARES Act, § 12003(b)(2), which provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Pub. L. 116-136, Div. B., Title II, § 12003(b)(2).

On March 26, 2020, the Attorney General of the United States issued a Memorandum about prioritizing home confinement of current federal inmates *where appropriate* in response to the ongoing COVID-19 pandemic. *See* Memorandum from the Attorney General to the Director of BOP regarding "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," Office of the Attorney General (March 26, 2020), https://www.justice.gov/file/1105491/dl?inline= [https://perma.cc/WGT3-D82C]. In this Memorandum, the Attorney

3

General directs the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." *Id*. The Memorandum sets forth a non-exhaustive list of discretionary factors to be considered in assessing which inmates should be granted home confinement and directs the BOP to grant home confinement "based on the totality of the circumstances for each individual inmate." *Id*. at 1–2. Although the Memorandum encourages the use of home confinement as an alternative, it leaves the determination about whether home confinement is appropriate to the discretion of the BOP.

The CARES Act authorized the BOP Director "to place prisoners in home confinement only during the Act's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning." *See* Home Confinement of Federal Prisoners After the COVID-19 Emergency, Slip Opinion for General Counsel, Federal Bureau of Prisons (Jan. 15, 2021), https://www.justice.gov/sites/default/files/opinions/attachments/2021/01/17/2021-01-15-home-confine.pdf [https://perma.cc/NP8B-2DV7]. On April 10, 2023, President Biden signed a bipartisan congressional resolution to end the national COVID-19 emergency, and the CARES Act covered emergency period ended thirty days later. *See* CARES Act, § 12003(a)(2); *see also* Relating to a National Emergency Declared by the President on March 13*,* Pub. L. No. 118-3.

When addressing a request for home confinement under the CARES Act, the BOP uses its authority under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541 to effectuate the Attorney General's directives. *Gould v. Warden, FCI Ashland*, No. CV 23-41-DLB, 2023 WL 2868001, at *1 (E.D. Ky. Apr. 10, 2023). The Court has no authority to grant release to home confinement. *See id*.; *see also* 18 U.S.C. § 3621(b). A prisoner is not automatically entitled to or guaranteed placement on home confinement, even under the CARES Act. *See Gould*, 2023 WL 2868001, at *2; *see Dudley v. Beard*, No. CV 0:21-046-WOB, 2021 WL 2533030, at *4 (E.D.

Ky. June 21, 2021). The BOP's placement decisions, including determinations about home confinement, are expressly insulated from judicial review because the provisions of the Administrative Procedures Act do not apply to these decisions. *See Gould*, 2023 WL 2868001, at *2; *see also* 18 U.S.C. § 3625. "[T]he authority to grant home confinement remains solely with the Attorney General and the BOP." *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020); *see United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020) ("the BOP has sole discretion to transfer an inmate to home confinement").

Petitioner alleges a due process claim under the Fifth Amendment, arguing that Respondent is arbitrarily withholding the protections of the CARES Act and 28 C.F.R. Part 0.[3] (*See* ECF No. 1 at PageID 4–5.) He argues, relying on 28 C.F.R. Part 0, that he is entitled to an individualized assessment of his eligibility for CARES Act placement with consideration of certain discretionary factors, such as his conduct in prison, his reentry plan, and whether he poses a risk to the community. (*Id.*) Petitioner argues that the BOP acted contrary to 28 C.F.R. Part 0 in denying CARES Act placement based solely on the fact that Petitioner had not yet served fifty percent of his sentence, without performing "the individualized review and determination that he was entitled to under the law." (*Id*. at PageID 6.)

However, Prisoners do not have a constitutionally protected right to home confinement. *Heard v. Quintana*, 184 F. Supp. 3d 515, 520 (E.D. Ky. 2016). The BOP has unfettered discretion to determine whether an inmate should be released on home confinement. Therefore,

---

[3] This final rule promulgated by the Department of Justice affirms that the BOP Director has authority and discretion to allow prisoners placed in home confinement under the CARES Act to remain in home confinement after the expiration of the covered emergency period. *See* Office of the Attorney General; Home Confinement Under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 88 Fed. Reg. 19830–40 (Apr. 4, 2023) (to be codified at 28 C.F.R. pt. 0).

Petitioner has no liberty interest in early release for purposes of a due process claim. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (no liberty interest where decisionmaker has sole discretion over grant or denial of benefit); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (explaining that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); *see also Ortega v. U.S. Immigr. & Customs Enf't*, 737 F.3d 435, 438 (6th Cir. 2013) ("When an individual violates a criminal law and receives a sentence, he usually cannot be heard to complain about the deprivations of liberty that result."). Petitioner's due process claim is without merit.

Petitioner also alleges an equal protection claim based on his awareness that "numerous inmates who had not served 50% of their sentence[s], nor were within 18 months of completing their sentence[s]," received an individual assessment and were released to home confinement under the CARES Act. (ECF No. 1 at PageID 7.)

"[T]he Fifth Amendment's Equal Protection Clause does not prohibit the government from treating different groups of persons in different ways; it merely prohibits the government from doing so arbitrarily or for a legally-impermissible reason." *See Heard*, 184 F. Supp. 3d at 522. Absent status as a "suspect" class member, Petitioner must demonstrate both that he was treated differently from others similarly situated and that the different treatment was not rationally related to a legitimate government interest. *Id.* Although Petitioner generally alleges his awareness of other inmates who were purportedly released to home confinement, he fails to allege the individual facts showing that those inmates were similarly situated, especially considering that an inmate's qualification for home confinement is an individualized determination. (*See* ECF No. 1 at PageID 6–7; *see also* ECF No. 7 at PageID 47.)

Petitioner fails to demonstrate that there was no rational relation to a legitimate

6

government interest.  Home confinement decisions are rationally related to the legitimate government interest that the BOP be permitted to exercise its discretion when determining home confinement.  *Heard*, 184 F. Supp. 3d at 523; *see Matherly v. Andrews*, 859 F.3d 264, 282 (4th Cir. 2017) (recognizing that BOP has a legitimate interest in protecting the public from further criminal acts by inmates); *see Hussain v. Warden Allenwood FCI*, No. 22-1604, 2023 WL 2643619, at *3 (3d Cir. Mar. 27, 2023) (stating that BOP has a legitimate interest in preventing any prisoner from fleeing while on home confinement); *see Kachkar v. Jamison*, No. 3:20-CV-1941, 2021 WL 2383230, at *5 (M.D. Pa. June 10, 2021) (denying equal protection claim on home confinement where prisoner was not in a suspect class and because BOP must consider the "the totality of circumstances for each individual inmate").  Petitioner's claim alleging an equal protection violation is without merit.

The Court has no authority to order the BOP to place Petitioner on home confinement.  *See Johnson v. Williams*, No. 4:20-CV-1325, 2020 WL 7324763, at *1 (N.D. Ohio Oct. 22, 2020) (dismissing § 2241 petition seeking home confinement).  The Court also has no authority to order the BOP to grant or deny Petitioner's request.  Because Petitioner has not demonstrated that § 2241 provides the relief requested, Respondent's Motion to Dismiss is **GRANTED**, and the Petition is **DISMISSED** for lack of subject matter jurisdiction.

## IV. APPELLATE ISSUES

A federal prisoner seeking relief under § 2241 need not obtain a certificate of appealability under 28 U.S.C. § 2253(c)(1) to challenge the denial of his petition.  *See Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004) (explaining that § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the filing fee required by 28 U.S.C. §§ 1913 and 1917.  To appeal *in forma pauperis* in a habeas case under § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the petitioner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, because Petitioner is not entitled to relief, the Court finds that any appeal would not be taken in good faith.  The Court therefore **CERTIFIES** under Rule 24(a) that any appeal would not be taken in good faith and **DENIES** Petitioner leave to appeal *in forma pauperis*.[4]

**IT IS SO ORDERED**, this 16th day of July, 2024.

                                                          s/ Sheryl H. Lipman
                                                          SHERYL H. LIPMAN
                                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[4] If Petitioner files a notice of appeal, he must also pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty days.